IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 25, 2004 Session

## ARTHUR McRAE, ET AL. V. KNOX COUNTY, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-708-00     Dale Workman, Judge**

_____

**FILED MAY 7, 2004**

_____

**No. E2003-01990-COA-R3-CV**

_____

This is a zoning dispute involving billboards. Its posture is not traditional because the Board of Zoning Appeals and the owner of the billboards are in agreement. The Board granted the owner two variance from a zoning ordinance; this action was challenged by the Appellees who claimed that the erection of the billboards adversely affected the value, use, and enjoyment of their property, which vested them with a special interest and entitlement to file a petition for certiorari for a judicial review of the Board's action. The Writ was granted, and a hearing resulted in a finding that the action of the Board of Zoning Appeals was unlawful and capricious.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., E.S., and D. MICHAEL SWINEY, J., joined.

Lawrence P. Leibowitz and Rebecca G. Bond, Knoxville, Tennessee, attorneys for appellants, Danny Amanns and Outdoor Displays, Inc.

Keith H. Burroughs and Audrey A. Headrick, Knoxville, Tennessee, attorneys for appellees, Arthur McRae, Brigitte McRae and Three Rivers Preservation Association, Inc.

**OPINION**

The Facts

Outdoor Displays, Inc., a company co-owned by Danny Amanns, Russell Amanns, and Dan Amanns, is the record owner of two (2) tracts of property located on East Governor John Sevier Highway at the intersection of Interstate 40 and the Holston River, in Knoxville. The property is zoned Commercial A, which permits the erection of billboards.

On August 31, 1998, with the intention of constructing two (2) outdoor sign structures on either side of the Interstate 40 overpass which ran above his property, Danny Amanns applied to the

Tennessee Department of Transportation Highway Beautification Department (hereinafter "TDOT") for two (2) off-premise sign permits, which were granted three weeks later. On November 5, 1998, he applied to the Knox County Building Inspector for two (2) off-premise sign permits, which were granted. The state and county permits were routinely granted in the normal course of business.

Amanns intended to erect two unipole type sign structures, and to accomplish this he surveyed, cleared and excavated the land; set in road beds, power poles and transformers; and ordered two (2) structures to be manufactured and delivered to the site. By January 4, 1999, the sign footings were in place. The Knox County Codes Inspector visited the site to inspect the footings and finding that all was in order, gave the "green light" to continue construction.

On January 13, 1999, with one sign complete and the other sign nearly so Amanns was informed by telephone call from Bill Pearce of Knox County Codes that Knox County may have issued the permits in error, and that a stop work order would probably be issued. Amanns immediately ceased construction. On January 15, 1999, after receiving no further information, he contacted Pearce to inquire about the matter, and was told that the Knox County Law Department had instructed Pearce not to issue a stop work order "at this time." Thereupon Amanns completed the construction of the second sign.

On February 8, 1999, Amanns received a letter advising that the two signs were in violation of Section 3.90.03(C) of the Ordinance, but with no elaboration respecting the "Scenic Highway System Act of 1971," which provides an exception to the prohibition on outdoor advertising structures within a certain distance of a scenic parkway, for areas of parkways that are within one-half mile of an intersection with an interstate highway. Tenn. Code Ann. § 54-17-206(a)(2) (1998).

On May 25, 1999, Amanns received another letter advising that he had thirty days to remove the signs. On November 18, 1999, he was served with a summons in a lawsuit, filed *by Knox County*, seeking the removal of the signs. Shortly thereafter, on November 30, 1999, he contacted Mike Moyers, the Knox County Law Director, about the lawsuit, who suggested that Amanns seek a variance and waiver from the Knox County Zoning Ordinances. On October 18, 2000, Amanns applied for variances from the Knox County Zoning Ordinances. The matter was heard on October 25, 1000, before the Knox County Board of Zoning Appeals [hereafter "BZA"].

At the hearing, Amanns recounted the events leading up to his appearance before the BZA, after which the Chairman gave the floor over for public comment. The only member of the community who spoke was Maxey Snyder, acting as secretary of Three Rivers Preservation Association, Inc. She stated that she was unprepared to speak and asked that the matter be postponed. Neither Arthur and Brigitte McRae nor any member of Town Hall East, Inc., attended the hearing.

The Commissioners discussed various grounds for granting the variances to Outdoor Displays, Inc., chief among them being whether the portion of Governor John Sevier Highway on

which Outdoor Displays, Inc,. built is in fact a state-designated scenic highway. Bruce Wuethrich, Director of Engineering and Public Works, expressed the following confusion over the question:

> We were not aware, it's, I think when you made application, you already had your state permit, is that not correct? We were not; we were totally unaware that John Sevier Highway was a state scenic highway. And that is essentially why the permit got issued . . . . It's our understanding that it is in fact either a scenic highway or a scenic parkway, which the zoning ordinance both addresses as being one in the same.

The Chairman pointed out that parts of the highway were designated scenic and parts were not. When the Chairman asked Amanns whether TDOT had designated this portion of roadway as scenic, he replied: "It is my understanding that, to be honest with you, from what I understood, that there is in the Tennessee Annotated Code, also a section that says where a state parkway crosses a main, er the interstate, that there is a half a mile that is regulated different."

Commissioner Moody had the final word in the discussion when she stated:

> Yeah, I guess I's just sittin' here and and I feel . . . that the County issued a building permit and in addition to that, the State agreed, uh, and we even have a letter here to confirm that, uh, saying that they were, um, valid permits. And this gentleman has gone and operated in good faith, uh and um, and no doubt sacrificed financially and his own time wise and personally and so forth. Um, and you know if you get to a point when government does issue permits and that kind of thing and then the person, you know, if if (sic) Mr. (Chairman Pinkston interjected, "We don't have any other choice but to go by what the government told us.") That's exactly right. If Mr. Amanns had gone on and built these and then come down and asked for it, to me that would be an entirely different thing. But he complied with all the regulations and I don't think it's fair to penalize him.

Immediately following Commissioner Moody's comments, the variances were approved by a vote of seven to two.

On November 22, 2000, Arthur and Brigitte McRae, Three Rivers Preservation Association, Inc., and Town Hall East, Inc., filed a Complaint and Petition for Writ of Certiorari in the Circuit Court for Knox County against Knox County, Knox County Board of Zoning Appeals, Danny Amanns and Outdoor Displays, Inc., alleging that the decision of the BZA was illegal, arbitrary and capricious. The trial court granted the Petition for Writ of Certiorari sought by Arthur and Brigitte McRae and Three Rivers Preservation Association, Inc., and held that the variances allowed by the

BZA were illegal, arbitrary and capricious. The case was remanded to the BZA for any further action. The owner appeals.

## The Issues

The issues propounded by Knox County, the Board of Zoning Appeals, Danny Amanns and Outdoor Displays, Inc., are (1) whether the McRaes and Three Rivers Preservation Association, Inc., had the requisite standing to challenge the ruling of the BZA, (2) whether the ruling of the BZA was illegal, arbitrary and capricious, (3) whether the trial court reweighed the evidence and substituted its judgment for that of the BZA.

## Standard of Review

The scope of review under the common law writ of certiorari is narrow. The reviewing court "may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute its judgment for that of the lower tribunal." *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001) (citing *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell, v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metropolitan Bd. Of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); *421 Corp. v. Metropolitan Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). Review under the common law writ of certiorari is limited to whether the board or tribunal (1) exceeded its jurisdiction; or (2) acted illegally, arbitrarily or capriciously. *Hoover*, 924 S.W.2d at 904. These issues are questions of law, and appellate review is *de novo* with no presumption of correctness accorded to the trial court. *Case v. Shelby County Civil Service Merit Bd.*, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002). If *any possible reason* exists justifying the board or tribunal's decision, such decision must be upheld. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641 (Tenn. 1990).

## The Issue of Standing

It is provided by law that [a]nyone who may be aggrieved by any final order or judgment of any board or commission . . . may have the order or judgment reviewed by the courts . . . ." Tenn. Code Ann. § 27-9-101 (2000). This broad language is limited to provide standing only *to parties who have a special interest or claim to have suffered a special injury*. In *Town of East Ridge v. City of Chattanooga*, 235 S.W.2d 30 (Tenn. 1950), the Tennessee Supreme Court held that "[t]he courts, and especially courts of equity, are not required to provide a remedy, either legal or equitable, to aid one who has not suffered a special injury, an injury that is common to all citizens similarly situated."

This judicial doctrine has been reaffirmed numerous times. In *League Central Credit Union v. Mottern*, 660 S.W.2d 787 (Tenn. Ct. App. 1983), a credit union sought certiorari to review a decision by the Commissioner of Financial Institutions to approve the charter and bylaws of another credit union. We held:

At the very least, we believe that a party should allege facts demonstrating that he, she or it is adversely affected by the decision of the administrative agency in order to be classified as an aggrieved person and therefore be entitled to judicial review. The "aggrieved and directly affected person" should be able to show a special interest in the final decision and that he, she or it is subject to a special injury not common to the public generally.

*Id.* At 791 (Citing *Sachs v. Shelby County Election Com*, 525 S.W.2d 672 (Tenn. 1975); *Bennett v. Stutts*, 521 S.W.2d 575 (Tenn. 1975); *Blair v. State ex rel. Watts*, 555 S.W.2d 709 (Tenn. 1977)). To summarize, a party is entitled to maintain an action for certiorari concerning a decision by a board or administrative agency if such party demonstrated that [he, she, or it] has a special interest in the final decision, different from the general public interest, or that the party will suffer "a special injury not common to the public generally."

As grounds for standing, Plaintiff/Appellees, Arthur and Brigitte McRae, claim to have suffered a diminution in the value of their property and loss of use and enjoyment due to the obstruction of their view of the Holston River and glaring lighting allegedly caused by the billboards.

The residential property of McRae adjoins the small tract on which the billboards are located. The nearest billboard is about 10 feet from their property line. Whether the billboards are visible from the interior of the McRae residence is disputed, but the testimony of Mr. McRae that flood lights which illuminate the billboards and reflect off them bathes the entire lower portion of his property in light, and detract from the residential nature of the general neighborhood.

Three Rivers Preservation Association claims a particular injury as a result of Outdoor Display, Inc.'s billboards. It is a non-profit corporation consisting of property owners in the immediate vicinity where the billboards are located, and was created for the purpose of monitoring and preserving the sanctity of the nature and beauty of the East Knox County area. In *Citizens for Collierville v. Town of Collierville*, 977 S.W.2d 321 (Tenn. Ct. App. 1998), as we held, "[t]he organization must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that make out a justiciable case had the members themselves brought suit." We found that the requirements of a justiciable controversy had been met, because the [plaintiff] was organized and incorporated for *the express purpose of protecting residential property in Collierville* from alterations in the zoning or the use of such property." Significantly, we held that "*[m]any members of CFC have standing to bring the action based on their status as adjacent property owners.*"

We agree with the trial judge that the allegations and proof that the Plaintiffs suffered a special injury on account of these billboards is sufficient to justify their standing to bring this action.

<u>The Issue of Whether the Plaintiffs Waived Their Right to Appeal</u>

The individual Plaintiffs did not appear at the hearing before the BZA. The corporate Plaintiff sent a representative, Ms. Snyder, who merely requested a continuance and did not participate in the hearing. The Appellant argues that the Plaintiffs/Appellees raised no issues before the BZA - since they did not appear - and consequently it must be concluded, from a legal perspective, that they waived their right to present any issue for judicial review. The Plaintiffs rely upon *In re Billing and Collection Tariffs of South Central Bell*, 779 S.W.2d 375, (Tenn. Ct. App. 1989) for the principle that a person appearing before an administrative tribunal must make timely objections to procedural errors and must raise in a timely manner the issues he deems material before he will be permitted to raise them on appeal. Stated differently, a litigant must first present issues to the trial court [or administrative officer] before he can present them for appellate review. The procedures adopted by the Plaintiffs in the case at Bar effectively required the trial judge to sit as a BZA, since the Board did not hear the evidence presented to the trial judge.

But the Appellees respond that the South Central Bell case involved a petition for a judicial review of an order issued by the Tennessee Public Service Commission pursuant to Tenn. Code Ann. § 21-5-322, which is a part of the Uniform Administrative Procedures Act. This Act does not apply to county and municipal boards. Tenn. Code Ann. §4-5-106(a). Moreover, the hearing which follows the issuance of the writ of certiorari does not limit the review to the proof heard by the BZA, because Tenn. Code Ann. § 27-9-111(b) provides that either party may introduce before the trial judge whatever additional proof is desired. We hold that the mere failure of the Plaintiffs to appear before the BZA and present proof is not fatal to their case.

<u>The Issue of Whether the Trial Judge Erred in Finding that the BZA Acted Illegally, Arbitrarily of Capriciously.</u>[1]

The case focuses on this issue which is dispositive.

Tennessee established a system of scenic highways by the passage of the Scenic Highway System Act of 1971. Tenn. Code Ann. §54-17-10, et seq. This system consists of highways or roads, or sections thereof, that are designated by the Legislature as part of the scenic highway system. The John Sevier Highway [S.R.168] was so designated. Under the Act it is unlawful to construct or maintain an advertising structure within [1000] feet of any road or highway designated as part of the system. The signs of the Appellants are well within 1000 feet of the John Sevier highway.

The parallel County Ordinance, Section 3.90.03(C), provides that no advertising sign shall be located within 2000 feet of any road or highway in Knox County which is a designated part of the

---

[1] The Knox County Zoning Ordinance provides that "every appeal shall be taken within 30 days from the date of the action causing such appeal." Mr. Amanns was ordered to remove the signs as being in violation of the Zoning Ordinance; he failed to do so and was sued by Knox County. The County attorney suggested that he apply for a variance, which he did. The issue of the timeliness of his appeal was not considered by the trial judge and we pretermit a discussion of the issue.

Tennessee scenic highway system or scenic parkway system. It also provided that "[n]o state or local governmental entity, agency or department shall take any action which undermines the scenic and historical qualities of roads designated as scenic highways under subdivision (a)(1)." Tenn. Code Ann. §54-17-114(b). The parallel Knox County Ordinance Section 6.60.04(A)(5) requires that if a variance is granted, it must be "in harmony with the general purposes and intent of this ordinance and will not be injurious to the neighborhood, detrimental to the public welfare, or in conflict with the comprehensive plan for development." The trial judge found that the variances were directly contrary to the interests of the Plaintiffs; that the McRaes have suffered as a result of the glaring lights of the billboards as well as a loss of the aesthetic enjoyment of the view from their property. Three Rivers is comprised of landowners in the immediate vicinity of the billboards who are also adversely affected by the intense lighting and the loss of aesthetic enjoyment of the environment in which they live.

Appellants argue that this case is controlled by an exception to the express prohibition on advertising structures being placed within 2000 feet of a scenic highway. The exception provides that (a)(1) "shall not apply to those parts of the system lying within any comprehensively zoned area, *unless otherwise provided by the zoning regulations* and within one-half mile of any section of the parkway system where it crosses an interstate highway system." Tenn. Code Ann. § 54-17-206(a)(2). The exception does not apply because it is applicable only if the zoning regulations permit it; and it is within one-half mile from an interstate. The Knox County Zoning Ordinances do not permit such an exception.

Appellants further argue that the variances were proper under Tenn. Code Ann. § 13-7-109(3), which provides:

> Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of the regulation or by reason of *exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under such sections would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property,* authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; *provided, that such relief may be granted without substantially impairing the intent and purpose of the zone plan and zoning ordinances.*

Knox County Ordinance Section 6.60.04 contains a similar provision regarding when a variance is permissible for consideration. It provides:

> The purpose of the variance is to modify the strict application of the specific requirements of this ordinance in the case of exceptionally

irregular, narrow, shallow, or steep lots, or other exceptional *physical conditions,* whereby such strict application would result in practical difficulty or unnecessary hardship *which would deprive an owner of the reasonable use of his land.* The variance shall be used only where necessary *to overcome some obstacle which is preventing an owner from using his property as the zoning ordinance intended.*

In ***McClurkan v. Bd. of Zoning Appeals for the Metro. Gov't of Nashville and Davidson County***, 565 S.W.2d 495, 497 (Tenn. Ct. App. 1977), the zoning ordinance at issue "contemplate[d] that it is the peculiar circumstances of the land that must be the primary consideration, rather than any hardship personal to or created by an owner of it." We held that the board of zoning appeals is not "authorized to grant a variance when the only hardship to the owner in complying with the zoning regulations is the result of a condition existing not in the land itself but in a structure which was created or altered by an owner of the property in violation of the zoning ordinance." We noted that "the case for a variance here is made even weaker by a *lack of any evidence of hardship other than pecuniary loss, which has been held insufficient by itself to justify a variance.*" *Id.* (Citing ***Houston v. Memphis & Shelby County Bd. of Adjustment***, 488 S.W.2d 387 (Tenn. Ct. App. 1972). Ultimately, the court held that "unique features of the land itself are entirely lacking, and any hardship concerned only the condition of the house, which was brought about by the owner of the property in violation of the zoning ordinance so that the Board exceeded its authority in granting the variance . . ." In the case at Bar, Knox County Ordinance Section 6.60.04(A0(3) provides that "[m]ere loss in value shall not justify a variance; there must be a deprivation of beneficial use of land."

Mr. Amanns candidly stated that "[w]e don't know how we will survive financially, if a variance is not granted and the signs are removed." The proof is clear that the variances were granted because of financial concerns superimposed upon the issuance of the unlawful permits. *See, Houston*, *supra*; ***Father Ryan High School v. Oak Hill***, 774 S.W.2d 190, (Tenn. Ct. App. 1988).

The judgment is affirmed at the costs of the Appellants.

_____
WILLIAM H. INMAN, SENIOR JUDGE