IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 25, 2011 Session

## ADMINISTRATIVE RESOURCES, INC. v. TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE

**Appeal from the Chancery Court for Davidson County**
**No. 09-558-IV    Russell T. Perkins, Chancellor**

---

**No. M2010-01199-COA-R3-CV - Filed June 2, 2011**

---

This case involves judicial review of the Tennessee Department of Commerce and Insurance's denial of a staff leasing company license. The trial court reviewed the denial of the license under the common law writ of certiorari standard and upheld the decision. Finding that the denial was unsupported by substantial and material evidence, we vacate the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert E. Boston, Mark W. Peters, and Michael T. Harmon, Nashville, Tennessee, and Arthur M. Fowler, Jr., Johnson City, Tennessee, for the appellant, Administrative Resources, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General, and R. Mitchell Porcello, Assistant Attorney General, for the appellee, Tennessee Department of Commerce and Insurance.

## OPINION

### I.  Facts and Procedural History

In this certiorari proceeding, Administrative Resources, Inc. ("ARI") appeals the trial court's decision to affirm the Tennessee Department of Commerce and Insurance's ("DCI") denial of ARI's application for an employee leasing group license. The DCI denied ARI's

application on the basis of a letter from the Commissioner of the Tennessee Department of Labor and Workforce Development ("DOL") stating that ARI owed delinquent unemployment taxes.

## A.    ARI's History with the DOL

From February 1997 until February 2003, Administrative Resources, Inc. ("ARI") was licensed as a staff leasing company.[1]  In the course of resolving unemployment insurance benefits proceedings in 1999, 2000, and 2002, DOL stated that ARI was a temporary agency rather than a staff leasing company.[2]  Due to DOL's reference to and treatment of ARI as a temporary agency, ARI allowed its staff leasing company license to lapse.

DOL audited ARI for the period of July 13, 2004 to April 19, 2005 to determine whether ARI was in compliance with payroll reporting standards under Tennessee's employment security laws.  On April 19, 2005 DOL determined that ARI was not in compliance and that ARI owed delinquent unemployment taxes over $500,000.00 plus interest.  According to ARI's brief on appeal, DOL later issued a "Redetermination Decision" in which DOL "took issue with, among other things, the fact that ARI was not licensed in Tennessee as a [staff leasing company]. . .", affirmed its assessment of delinquent taxes, and requested that ARI become re-licensed.[3]  ARI disputed DOL's decision and initiated an appeal of the assessment.[4]

---

[1]  A staff leasing company is defined as:

[an] individual or business that, under an agreement between the client company and the leasing company, and for a fee, places all or substantially all of the regular, full-time employees of the client company on the leasing company's payroll and leases them to the client company on an ongoing basis with no restriction or limitation on the duration of employment

Tenn. Code Ann. § 62-43-103(10).

[2]  An entity operating as a temporary agency does not require a staff leasing company license.

[3]  DOL's Redetermination Decision is not part of the Technical Record of this appeal.

[4]   ARI's appeal of DOL's unemployment tax assessment was pending when ARI initiated the certiorari action giving rise to the instant appeal.

**B.     Facts Leading to ARI's Application for a Staff Leasing Group License**

In a letter dated May 7, 2004, DCI informed ARI that its staff leasing company license had expired and advised ARI that if it was engaged in employee leasing in Tennessee, it was "doing so without a valid license."  On June 7, 2004, ARI's attorney sent a letter to DCI requesting a copy of the rules and regulations defining a staff leasing company, and asking which, if any, of four companies[5] were licensed as staff leasing companies.  On June 9, 2004, DCI responded by letter to ARI's attorney, stating that, although none of the four companies had an active employee leasing license, "Administrative Resources, Inc. has an expired license."

On June 1, 2006, before ARI applied for a staff leasing company license, James G. Neeley, Commissioner of DOL, wrote an apparently unsolicited letter to Paula Flowers, Commissioner of DCI, that read in its entirety, as follows:

> This is to request that your Department not reinstate the leasing company license of Administrative Resource Incorporated (ARI), or issue licenses to any of the names that company has used with our agency listed below:
>
> ARI/Electronic Components Division
> ARI Payroll Transfers Division
> Human Resources Services Inc.
> Management Resources
> South Gate Salon
> Staffing Solutions Inc.
>
> In addition, we have learned that the company has used these other names which are:
>
> Blue Ridge Management Services LLC
> Franks LLC
> Management Advisors LLC
>
> ARI and its related companies owe several hundred thousand dollars in unpaid unemployment insurance premiums (taxes), and should not be reinstated or licensed without a certificate of clearance from this agency.

---

[5] The four companies referenced were: Administrative Resources, Inc., ARI, Inc., Staffing Solutions, Inc., and Human Resources Services, Inc.

On June 7, 2006, DCI's Assistant Commissioner wrote a letter to Commissioner Neeley which read as follows:

> I appreciate your taking the time to notify Commissioner Flowers about the issues of Administrative Resources incorporated (ARI) as relayed in your letter dated June 1, 2006. Commissioner Flowers thanks you for bringing this matter to her attention and forwarded it to me for review and response.
>
> The Employee Leasing Board's records were searched for the multiple entities listed in your correspondence. None of the agencies referenced in your letter are currently licensed by the Board. Administrative Resources Incorporated (ARI) of Johnson City, Tennessee did hold a license, but it expired in June of 2003.
>
> At your convenience, please provide us documentation regarding the issues outlined in your letter for our records. We will consider this information if any of the named companies apply for licensure in the future. If you have documentation that these entities may be practicing without a license, then please provide those documents also.
>
> I hope you find this information useful. If you have any questions or concerns, please do not hesitate to contact me or any member of my staff.

DOL provided no documentation to DCI as requested in this letter.

### C.    ARI Applies to Become Relicensed as an Employee Leasing Group

On April 3, 2007, ARI, Administrative Resources Inc.—Payroll Tranfer Division, and Blue Ridge Management LLC, jointly applied for a license as a staff leasing group[6] in which ARI indicated the companies would be "meeting the financial requirements on a consolidated basis" and would "supply the financial statements and information with fifteen (15) days of the date appearing on a notification that the applicant has met all other requirements to obtain a license." The entities submitted corporate documents from the Secretary of State's office and a "Staff Leasing Group Guaranty Agreement" where ARI pledged to "guaranty the debts and obligations arising out of the operation of each staff leasing company in the group with

---

[6]  A "staff leasing group" is defined as "two (2) or more, but no more than (5), corporate staff leasing companies each of which are majority owned by the same ultimate parent, entity, or person." Tenn. Code Ann. § 62-43-103(11).

respect to wages, employment taxes, insurance premiums and employee benefits of each other staff leasing company within the group."

On or about May 22, 2007, ARI submitted its financial documentation; DCI, however, was unable to accept the statements because they were not compiled according to general accounting principles as required by Tenn. Code Ann. § 62-43-108. ARI was notified of the discrepancy. On August 9, Commissioner Neeley sent a letter to Commissioner Newman of DCI, stating: "This is to request that your Department not reinstate the leasing company license of Administrative Resource Incorporated (ARI) . . . ARI and its related companies owe several hundred thousand dollars in unpaid unemployment insurance premiums (taxes) and should not be reinstated or licensed without a certificate of clearance from this agency." On August 20, ARI re-submitted a Statement of Assets, Liabilities and Stockholders' Equity in support of its application for the license.

On August 24, 2007, Judy Elmore, an employee of DCI, sent a Memo to the Assistant Commissioner of DCI with a subject line stating "Registration Approval: Administrative Resources, Inc. / Administrative Resources Payroll Transfer Div." The memo stated that ARI "met the following minimum requirements[7] for registration as a Staff Leasing Group in the State of Tennessee . . . [t]herefore I am making the recommendation for approval." The word "approval," however, was marked through, and the word "denial" was hand-written above it.[8]

---

[7] The minimum requirements listed in Mrs. Elmore's letter were as follows:

1) A completed, signed and notarized application and required application fee of two-hundred-fifty dollars ($250). . . .
2) An accounting net worth of at least twenty-five ($25,000) dollars or twenty ($20) dollars per leased employee not to exceed a total of fifty thousand ($50,000) dollars by providing the following:
    (a) Financial statement prepred in accordance with generally accepted accounting principles; and
    (b) At least a compilation report prepared by a CPA; and
    (c) Net worth must be established within six (6) months prior to the application date; and . . .
    (d) Financial statement shall be attested by the president, CFO and at least one (1) control person of the company. . . .
. . .
4) A certificate of good standing from the Tennessee Secretary of State's office. . . .
5) Proof of Worker's Compensation and Employer's liability insurance with a current expiration date. . . .

[8] The signature of "Don Trotter" appears under the handwritten modification to the memo. It is

(continued...)

On September 12, 2007 DCI sent a letter denying ARI's request for a staff leasing group license on the ground that DOL "has stated this company owes several hundred thousand dollars in unpaid unemployment insurance premiums (taxes)." The letter advised ARI that it had sixty days to "submit proof that the reason for denial has been cured" and that the Assistant Commissioner "would then make a decision as to whether or not the defect has been cured and whether or not to issue the license."

On November 8, 2007, counsel for ARI wrote a letter to DCI seeking to "appeal" the decision to deny ARI's application for a staff leasing group license. In the letter, ARI asserted that the denial was based on "erroneous information furnished [by the DOL]" and that there was an ongoing administrative proceeding between ARI and DOL regarding the delinquent taxes ARI allegedly owed. ARI requested "all written correspondence that you have received from the [DOL] regarding this matter" and suggested that the DCI issue a "conditional staff leasing license pending a final resolution of the dispute between [ARI and the DOL]." DCI and ARI were unable to reach an agreement on the terms of a conditional license. As a result, the DCI Assistant General Counsel informed counsel for ARI by letter dated January 23, 2009, that DCI could not approve a permanent or conditional license stating:

> I do not believe this Department can do anything other than to stand behind the September 12, 2007 denial decision, given that the reason for denial has still not been cured as of present. Under T.C.A. § 62-43-109(a)(5), the Commissioner is authorized to deny an application for licensure where a person is not of financial responsibility.

The letter further stated, "there is no available appeal or right to any hearing under the contested case provisions of the Uniform Administrative Procedures Act . . . in the event a license application is denied under T.C.A. § 62-43-109, and that it is solely the decision of the Commissioner . . . ."

## D. Chancery Court Proceedings

On March 24, 2009, ARI filed a Petition for Writ of Certiorari in the Chancery Court for Davidson County requesting judicial review of the denial of the license under the statutory writ of certiorari. Following the denial of a motion to dismiss the case, ARI filed a Motion for Entry of Scheduling Order which requested the court to proceed under the statutory writ of certiorari. DCI responded to ARI's motion and contended that the review

---

[8](...continued)
unclear from the record who Don Trotter was or the position he held.

should be under the common law writ of certiorari because DCI was performing an administrative function. The trial court determined that the case would proceed under the common law writ of certiorari, Tenn. Code Ann. § 27-8-101; the court conducted its review in accordance with Davidson County Local Rule 25, which governs judicial review of administrative decisions.

The trial court subsequently entered a Memorandum and Final Order affirming DCI's decision to deny ARI's application for an employee leasing company license. Specifically, the trial court found:

> DCI's failure to specifically state that ARI was not of good financial responsibility in its September 12, 2007 notice does not constitute reversible error or prejudicial error under the common law writ of certiorari standard. . . .
>
> The Court determines that DCI could properly rely on Commissioner Neeley's letter[] and that it was within the realm of DCI's authority to consider a disputed determination of several hundred thousands of unpaid premiums or taxes as a basis for concluding that ARI was not of good financial responsibility for licensure purposes. . . .
>
> The Court concludes that DCI could rely on the DOL's determination on the financial responsibility issue.

The court denied ARI's request for attorneys fees and taxed court costs against ARI.

ARI appeals raising the following issues for our review:

1.  Whether the trial court erred in determining that the decision of the DCI denying ARI a staff leasing group license was supported by substantial and material evidence?
2.  Whether the trial court erred in determining that the DCI's decision was not arbitrary and capricious?
3.  Whether the trial court erred in determining that the DCI followed the statutory requirements for denying the license?
4.  Whether the trial court erred in refusing to hear the matter under the statutory writ of certiorari?

## II. Discussion

At the outset, we address ARI's contention that the trial court erred in reviewing this case under the common law writ of certiorari. ARI posits that the statutory writ of certiorari applies because DCI performed a "judicial" function when denying ARI's application for a license. DCI defends the trial court's utilization of the common law writ of certiorari, contending that, in denying ARI's application, DCI was administering and enforcing laws and did not decide a controversy arising under those laws.

In Tennessee, there are two types of writs of certiorari: (1) the common law writ, codified at Tenn. Code Ann. § 27-8-101 and (2) the statutory writ, codified at Tenn. Code Ann. § 27-8-102. Our Supreme Court has recognized that determining "whether an appeal of an administrative body's decision falls within a common law or statutory writ of certiorari can be a complex [question]." *Tenn. Waste Movers, Inc. v. Loudon County, et al.*, 160 S.W.3d 517, 520 n.2 (Tenn. 2005). In the absence of a statute expressly granting review under the statutory writ, review under Tenn. Code Ann. § 27-8-102 is available to review an administrative agency's decision only if the following three requirements are met: "(1) the order of the administrative body of which review is sought is one for which no judicial review is provided; (2) the function performed by the lower tribunal is essentially judicial in nature; (3) the order for which review is sought finally determines the rights of the petitioner." Ben H. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 MEM. ST. U. L. REV. 19, 27 (1973); *see also Buford v. Tenn. Dept. of Correction*, No. M1998-00157-COA-R3-CV, 1999 WL 1015672, at *4 (Tenn. Ct. App. November 10, 1999) (adopting the three-part test for the statutory writ of certiorari outlined in Judge Cantrell's article). Where an agency is performing an administrative function, review under the common law writ is appropriate, since review under the statutory writ would violate the doctrine of separation of powers. Cantrell, *supra*, at 21. Of necessity, then, we consider the statutory framework of the decision at issue.

Tenn. Code Ann. § 62-43-108 requires that a staff leasing company be licensed and that an applicant meet certain minimum standards. Pursuant to Tenn. Code Ann. § 62-43-109(a)(5), the Commissioner of DCI is authorized to deny an application for a staff leasing company license "upon a finding that any person named in the application is not of good moral character, business integrity or financial responsibility." Where an applicant is denied a license, § 62-43-109(b) provides that the applicant "shall have sixty (60) days . . . to submit proof that the reason or reasons for denial have been cured . . . ." There is no opportunity for the applicant to contest the basis of the denial decision or to otherwise show compliance with the minimum standards unless the Commissioner requests additional information as authorized at Tenn. Code Ann. § 62-43-108(b)(1)(G). Likewise, the decision for the Commissioner, once any supplemental information has been provided, is "whether or not the

defect or defects have been cured and whether or not to issue the license." Tenn. Code Ann. § 62-43-109(b). Considering the foregoing, the function of the Commissioner is to receive the application and make a determination of whether the applicant meets the minimum qualifications. If the Commissioner denies the application, the applicant is allowed sixty days to show that the reasons for the denial have been cured and, if the Commissioner determines that further information is needed, the applicant is afforded the opportunity to provide such information. The license application procedure, in form and substance, is administrative, not judicial; consequently, review by common law writ of certiorari is appropriate.

Under the common law writ, the decision of the lower tribunal will only be set aside if it "exceeded its jurisdiction or acted, illegally, fraudulently, or arbitrarily." *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson County*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006) (citing *Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *Daniels v. Traughber*, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998)). Review under a common law writ "does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed." *Id.* Rather, the courts must review the record to determine whether there is any material evidence to support the decision; "a decision without evidentiary support is an arbitrary one." *Id.* at 904 (citing *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 276–77 (Tenn. 1980); *Lewis v. Bedford County Bd. of Zoning App.*, 174 S.W.3d 241, 246 (Tenn. Ct. App. 2004); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000); *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979)). For the purpose of this inquiry, "material evidence" is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. *Id.* (citing *Lafferty v. City of Winchester*, 46 S.W.3d at 759; *Hedgepath v. Norton,* 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992); *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. 1965)). This Court employs the same limited standard of review used by the trial court. *See Wright v. Tenn. Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 8 (Tenn. Ct. App.2008) (citing *Ware v. Greene*, 984 S.W.2d 610, 614 (Tenn. Ct. App.1998).

ARI contends that Commissioner Neeley's June 1, 2006 letter to DCI regarding ARI's allegedly unpaid unemployment insurance premiums was not substantial and material evidence in support of the decision to deny the license.[9] DCI asserts that its decision to deny ARI's application was not arbitrary because Commissioner Neeley's letter was evidence of ARI's financial irresponsibility. We find that the letter was not substantial and material

---

[9] The June 1, 2006 and August 9, 2007 letters from Commissioner Neeley were, in substance, the same, and the letter to ARI advising of the denial of its application for a license does not reference the date of the letter from Commissioner Neeley upon which the denial is based. The date of the letter is inconsequential in light of our disposition of this appeal.

evidence upon which DCI could determine that ARI was not financially responsible, giving due consideration to the provisions of Tenn. Code Ann. § 62-43-108(b)(1)(G).

In response to Commissioner Neeley's letter, the Assistant Commissioner of the DCI requested "documentation regarding the issues outlined in [Commissioner Neeley's] letter for our records" in anticipation that the information would be considered in the event ARI or its related companies would apply for a license in the future. DOL did not provide any documentation to support Commissioner Neeley's statement. We agree with DCI's argument that "it is not unreasonable for a state agency to rely upon the findings of another state agency" and that the DCI could have considered proper documentation of the DOL's assessment in determining whether ARI was financially responsible. The record, however, does not show that DCI ever received the documentation regarding the assessment of unpaid unemployment insurance premiums or the findings upon which DOL based the assessment. The mere assertion that ARI owed unpaid taxes does not, in and of itself, show lack of good moral character, business integrity, or financial responsibility and the record lacks the quantum of evidence necessary to support the denial of ARI's application. *See Leonard Plating*, 213 S.W.3d at 904 ("The amount of material evidence required to support a board's or agency's decision must exceed a scintilla of evidence but may be less than a preponderance of the evidence.")

Moreover, the decision to deny the license was made notwithstanding the determination of Ms. Elmore that ARI met the minimum requirements for licensure and her recommendation that the license be granted. Tenn. Code Ann. § 62-43-108(b)(1)(G) provides that "[t]he applicant shall provide other information that the commissioner deems necessary to show that the applicant and each controlling person is a person of good moral character, business integrity and financial responsibility." In administering the statute, the Commissioner failed to afford ARI the opportunity to provide information relative to the DOL assessment prior to making its determination that ARI was not financially responsible.[10] In light of the Commissioner's reliance on the DOL letter and the failure of DOL to provide supporting information the decision to deny the license was arbitrary.

We are mindful that we are not permitted to "(1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the lower tribunal," *Leonard Plating*. 213 S.W.3d 898 at 903; we hold only that the evidence does not support the denial of the license on the record presented and was,

---

[10] Under the facts and circumstances of this case, an appropriate consideration for the Commissioner might be whether ARI meets the minimum standards in the event the DOL assessment is upheld in the pending appeal.

therefore, arbitrary. ARI is entitled to a thorough review of its application, including consideration of evidence which demonstrates its compliance or lack of compliance with the standards set forth in the statute. For this reason, we vacate the decision of the trial court and remand the case with instructions that it be remanded to DCI for reconsideration based on the existing record and such other evidence of any defect in ARI's application or qualification for a license which the Commissioner deems worthy of consideration. In the event the Commissioner deems it necessary that ARI provide further information to support its application, such request should identify particular area(s) of concern with sufficient specificity to allow ARI to comply with Tenn. Code Ann. § 62-43-108(b)(1)(G).

## III. Conclusion

For the foregoing reasons, the decision of the trial court is vacated and is remanded to the trial court with instructions to return the case to the DCI for further action consistent with this opinion.

_____
RICHARD H. DINKINS, JUDGE