IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2018 Session

## WAYNE GOODWYN v. BOARD OF ZONING APPEALS OF THE METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, TN

Appeal from the Circuit Court for Davidson County
No. 16C-399 Joseph P. Binkley, Jr., Judge

_____

### No. M2017-00192-COA-R3-CV

_____

After the Metropolitan Board of Zoning Appeals granted a special exception permit for a nearby property, Appellant filed a petition for writ of certiorari in the Davidson County Circuit Court. The trial court ultimately concluded that the permit was properly issued. Having reviewed the record transmitted to us on appeal, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Jamie R. Hollin, Nashville Tennessee, for the appellant, Wayne Goodwyn.

Thomas V. White and George A. Dean, Nashville, Tennessee, for the appellee, Ed Clay.

Board of Zoning Appeals The Metropolitan Government of Nashville and Davidson County, appellee[1]

_____

[1] Appellee, Board of Zoning Appeals of The Metropolitan Government of Nashville and Davidson County did not file a brief.

## OPINION

### Background and Procedural History

The property at issue in this case is located in Nashville at 209 S. 5th Street ("the Property"). Marketed under the name "East Ivy Mansion," the Property boasts 44,000 square feet of indoor and outdoor space and sits on a parcel that is over one acre. The perimeter of the Property is bordered by a brick wall.

In 2013, the Metropolitan Board of Zoning Appeals ("the Board") granted Ed Clay ("Mr. Clay") a special exception permit to use the Property for historic home events. The permit had a limited term of 26 months and was subject to a number of other special conditions. Among other things, Mr. Clay was not allowed to host more than a maximum of 250 guests at any event.

Mr. Clay applied for a new special exception permit in December 2015, and by letter dated December 23, 2015, the Board sent a notice to neighboring owners informing them of his application. The letter specifically informed nearby owners of Mr. Clay's intent "to use the existing residence and property for Historic Home Events." Formal opposition to Mr. Clay's request soon followed.

By letter dated January 19, 2016, counsel for Wayne Goodwyn ("Mr. Goodwyn") notified the Board of his client's opposition to the pending application. Mr. Goodwyn, who owns a home near the Property, objected to the application due to his belief that "any and all events [should] be limited to the inside of the principal dwelling" on the Property. In support of this position, the January 19 letter noted that pursuant to Metro Code § 17.16.160(B), the location for historic home events are directed to be "within a historically significant structure, as determined by the historic zoning commission." To that end, the January 19 letter further observed that Robin Zeigler ("Ms. Zeigler"), Historic Zoning Administrator with the Metropolitan Historic Zoning Commission, had reported that the principal dwelling was the only historic structure on the Property.

Mr. Clay's application was first entertained by the Board at a hearing on January 21, 2016. Upon the conclusion of the proceedings on that date, however, the matter was deferred to the Board's next meeting on February 4, 2016. In advance of the February 4 hearing date, the Board received multiple comments from concerned citizens. Whereas many citizens wrote the Board in support of Mr. Clay's proposal, other citizens wrote the Board to object to it. At the end of the February 4 hearing, the Board ultimately decided to grant Mr. Clay the special exception permit by a vote of six to one. The order resulting from the Board's hearing specifically noted that (a) the brick wall surrounding the Property was "attached to the home and is . . . therefore a part of the home" and (b) "[u]se of the property within the wall is customary, incidental and subordinate to the special

exception." As previously, the permit granted by the Board was subject to a number of special conditions.

In response to the Board's actions, Mr. Goodwyn filed a petition for writ of certiorari in the Davidson County Circuit Court. The petition averred that the Board's ruling was "arbitrary, capricious, or illegal" and took specific issue with the fact that the Board's ruling allowed events to take place anywhere within the brick wall that surrounded the perimeter of the Property. In an affidavit filed contemporaneously with the petition, Mr. Goodwyn stated that the allowance of outside events on the Property would greatly diminish his family's ability to enjoy their neighborhood. Following the filing of Mr. Goodwyn's petition, the trial court issued a writ of certiorari directing the Board to certify and forward a complete record of its proceedings.

In light of the fact that Mr. Goodwyn's petition only named the Board as a respondent, Mr. Clay subsequently moved to intervene in the case. An agreed order granting his motion to intervene was entered on May 9, 2016.

On June 24, 2016, a portion of the administrative record was filed with the trial court. In addition to including a record of the Board's February 4, 2016 proceedings, the record filed with the trial court included a record of proceedings that had taken place before the Board in March 2016. Although the record reflects that the Board had conducted a rehearing of its earlier decision during these March proceedings, it reached the same result, granting Mr. Clay's request for a permit "subject to the same . . . conditions enumerated in the Board's prior order from the February 4, 2016 BZA meeting." A record of the Board's meeting from January 21, 2016, was not included as a part of the June 24 filing of the administrative record, but this omission was rectified shortly thereafter when a supplement to the administrative record was filed on July 1, 2016.

Review proceedings took place the following fall. A hearing was initially held on November 3, 2016, and was later completed on November 29, 2016. At the conclusion of the November 29 hearing date, the trial court orally ruled that the decision of the Board should be upheld. A formal order affirming the Board's actions was subsequently entered on December 16, 2016. This appeal followed.

**Issues Presented**

Mr. Goodwyn raises the following issues for our review, restated slightly:

1. Whether the special exception permit for a historic home events venue was issued by the Board arbitrarily, capriciously, or illegally.

2. Whether the Board exceeded its limited jurisdiction in granting the special exception permit.

3. Whether the trial court erred by affirming the decision of the Board based upon testimony presented in a rehearing that occurred after the writ of certiorari issued.

In addition to responding to the foregoing matters, Mr. Clay poses an additional issue, restated slightly as follows:

4. Whether the issues relating to activities within the historic structure are collaterally estopped by virtue of prior litigation between these same parties.[2]

**Standard of Review**

The common law writ of certiorari is the vehicle for reviewing decisions of local boards of zoning appeals. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals of Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997) (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)). The scope of review afforded by this writ is quite limited. *421 Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000) (citation omitted). As this Court has stated previously:

[J]udicial review . . . is limited to whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently.

The scope of judicial review under the common law writ of certiorari also includes a determination of whether the board acted without material evidence to support its decision.

. . . .

[W]hile judicial review under the common law writ does not involve review of the intrinsic correctness of the lower tribunal's decision, and a reviewing court may not reweigh the evidence presented to the board, a court is required to review the record of the board's proceeding to determine whether there is material evidence to support the board's conclusion.

---

[2] Mr. Clay's additional issue is predicated on the fact that Mr. Goodwyn previously asserted challenges to the special exception permit that was granted in 2013. Mr. Goodwyn filed a petition for writ of certiorari in the Circuit Court as a result of the Board's earlier decision in 2013, but his action was subsequently dismissed due to his failure to prosecute the case.

*Lewis v. Bedford Cnty. Bd. of Zoning Appeals*, 174 S.W.3d 241, 245-46 (Tenn. Ct. App. 2004) (internal citations omitted); *see also 421 Corp.*, 36 S.W.3d at 474 (noting that review under the common law writ "consists of determining whether the administrative body exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision").

## Discussion

Under Metro Code § 17.40.180(C), the Board is vested with the power to hear and act upon applications for special exception use permits. Here, the dispute is whether the Board erred in granting a historic home events special exception permit to Mr. Clay. Mr. Goodwyn's specific issue is with the Board's application of Metro Code § 17.16.160(B)(2), which states that "[t]he events shall be within a historically significant structure, as determined by the historic zoning commission." According to Mr. Goodwyn, the Board ignored the determination of the Historic Zoning Commission and issued a permit for a location that conflicted with the Commission's determination. Before addressing these substantive concerns, we turn first to Mr. Goodwyn's raised issue about the March 2016 proceedings that took place before the Board.

In his brief, Mr. Goodwyn argues that the Board's March 2016 proceedings were improperly relied upon by the trial court because those proceedings took place after the writ of certiorari had issued. In support of this argument, he cites to this Court's prior opinion in *Stone Man, Inc. v. Rutherford County Regional Planning Commission*, 1985 Tenn. App. LEXIS 2607 (Tenn. Ct. App. Jan. 8, 1985). In a footnote to that opinion, this Court noted as follows:

> The effect of granting a writ of certiorari is to remove the matter from the lower tribunal and place it before the reviewing court. At common law, granting a writ of certiorari had the effect of preventing the original tribunal from proceeding with the matter.
>
> . . . .
>
> Once the trial court granted the writ of certiorari on November 23, 1982, and the Commission's record was filed with the court clerk, no further proceedings should have been conducted by the Commission until the judicial proceedings were concluded. Proceeding simultaneously in both the administrative and judicial forums on the same matter is fraught with the dangers of inconsistency and duplication of effort.

*Id.* at \*8, n.3 (internal citations omitted).

The dangers and concerns alluded to in *Stone Man* did not manifest in this case. The Board reached the same result in the March proceedings as it had previously, and we note that the trial court did not conduct any certiorari review following the issuance of the writ until many months after the Board's March proceedings. Indeed, as noted previously, the initial review hearing date in the trial court was November 3, 2016. We further note that when the administrative record was initially forwarded to the trial court, the record actually included the disputed March proceedings.

Moreover, we note that in *Stone Man,* this Court did not ultimately curb the scope of the actions under review due to the fact that some of the administrative proceedings had taken place after the issuance of the writ. In fact, following the aforementioned quotation from *Stone Man* upon which Mr. Goodwyn relies, Judge Koch, writing for this Court, stated as follows:

> Notwithstanding this procedural irregularity, we will proceed to consider this appeal as if the writ had been granted after the Commission finally declined to approve Stone Man's site plan. To do otherwise would be to require the parties to duplicate proceedings already conducted where the same result would inevitably be reached. There is no need to require Stone Man to undertake this useless procedure.

*Id.* In line with Judge Koch's reasoning, we find no reversible error with respect to the inclusion and consideration of the March proceedings as part of the certiorari review.

With respect to the merits of the Board's actions, we do not agree with Mr. Goodwyn that the Board exceeded its jurisdiction, or that its granting of the permit was arbitrary, capricious, or illegal. The Board had the authority to grant a permit for events "within a historically significant structure, as determined by the historic zoning commission," and the administrative record supports the trial court's conclusion that the Board had a sufficient basis upon which to issue the permit that it did. Although there is no dispute that the dwelling on the Property is the only historically significant structure for which a historic home events permit would be proper, this does not mean that the Board erred in granting a permit for activities within the area encompassed by the Property's brick wall. Based on the proof before it, including testimony from an official with the Historic Zoning Commission, the Board had a basis to consider the brick wall to be a part of the dwelling/historically significant structure. If the wall is considered a part of the home, then it logically follows that the space inside of/enclosed by the wall is within the historically significant structure.

Indeed, although Mr. Goodwyn correctly notes that Metro Code § 17.16.160(B)(2) requires the location for the permitted activities to be "within a historically significant structure, as determined by the historic zoning commission," the record does not show

that this requirement was transgressed. There was evidence[3] before the Board that the brick wall was attached to the home, and based on this fact, it was proper to consider the wall as part of the historical structure identified by the Historic Zoning Commission. In fact, as the trial court observed, testimony from an official with the Commission indicated that things attached to or contiguous with the dwelling should be considered a part of the historical structure. Specifically, we highlight the testimony of Ms. Zeigler, Historic Zoning Administrator with the Commission. During the Board proceedings, a Board member asked Ms. Zeigler whether "everything that's contiguous to the building with the tower is all historic?" Ms. Zeigler answered this question in the affirmative and responded to a number of other questions wherein this same point was reinforced. For example, although Ms. Zeigler did not have personal knowledge as to whether a "hip roof" was connected to the house, her testimony reflected that it should be considered a part of the historical structure if it were, in fact, connected.

In light of the foregoing, we do not find favor in Mr. Goodwyn's arguments that the Board's actions were improper. Because the wall was properly considered to be a part of the historical structure, a permit was permissibly granted for the area within the wall. There is no basis for disturbing the Board's actions, and we therefore affirm the trial court's decision to uphold the issuance of Mr. Clay's permit. Given our conclusion with respect to this matter, we pretermit Mr. Clay's raised issue pertaining to the doctrine of collateral estoppel.

## Conclusion

The trial court's judgment is affirmed. Costs of this appeal are assessed against the Appellant, Wayne Goodwyn, and his surety, for which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of this Court's judgment, and for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[3] For example, the record contains sketches depicting the brick wall as being attached to the home.